UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELENA COTTALLAT ROMO,<br><br>                            Plaintiff,<br><br>-against-<br><br>BEGINNINGS DAYCARE CORP. d/b/a NEW BEGINNINGS DAYCARE and ALBA PATRICIA DURAN,<br>                            Defendants. | **COMPLAINT** |

Plaintiff Elena Cottallat Romo ("Plaintiff"), by her attorneys Frontera Law PLLC, complaining of Defendants Beginnings Daycare Corp. d/b/a New Beginnings Daycare and Alba Patricia Duran ("Duran") (together, "Defendants"), alleges:

## PRELIMINARY STATEMENT

1. Plaintiff was employed as a daycare worker caring for babies and toddlers at New Beginnings Daycare in the South Richmond Hill neighborhood of Queens, New York.

2. Plaintiff regularly worked more than forty hours per week at New Beginnings Daycare. Throughout her employment, Defendants failed to pay Plaintiff overtime wages for the hours she worked over forty per week, or spread-of-hours pay for shifts that spanned more than ten hours. In addition, Defendants failed to give Plaintiff wage notices or wage statements in accordance with the law.

3. Plaintiff was also fraudulently induced to pay Defendant Duran sixteen thousand dollars, purportedly to be her business partner and open a second daycare location. However, no daycare was ever opened, and upon information and belief, Duran had no plans to open a second location with Plaintiff. Duran made false

promises to Plaintiff, took her money, and refused to return it even though it was not used for their purported business venture.

4. Plaintiff brings this action seeking injunctive and declaratory relief against Defendants' unlawful actions and to recover unpaid overtime wages, unpaid spread-of-hours pay, statutory damages, pre- and post-judgment interest, attorneys' fees, and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), and the New York Labor Law § 190, *et seq*. ("NYLL"). and the New York Wage Theft Prevention Act ("WTPA"). Plaintiff also seeks monetary damages to redress the injuries she suffered due to Defendants' fraud and fraudulent inducement in violation of the law.

## JURISDICTION & VENUE

5. This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337 and has supplemental jurisdiction over Plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391, as Defendant New Beginnings Daycare is located in the Eastern District of New York, and the events giving rise to Plaintiff's claims occurred within this judicial district.

## THE PARTIES

**Plaintiff**

7. Plaintiff Elena Cottallat Romo resides in Queens, New York.

8. Plaintiff was employed by Defendants from approximately September 2022 to May 2023.

2

**Defendant Beginnings Daycare Corp.**

9. Defendant Beginnings Daycare Corp. is a New York corporation that owns, operates, and does business as New Beginnings Daycare, a daycare program located at 102-18 Van Wyck Expressway, South Richmond Hill, New York 11419.

10. New Beginnings Daycare is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

11. New Beginnings Daycare has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

12. In the three years preceding the filing of this Complaint, New Beginnings Daycare had an annual gross volume of sales exceeding $500,000.

**Defendant Alba Patricia Duran**

13. Throughout Plaintiff's employment, Alba Patricia Duran ("Duran") was the owner of New Beginnings Daycare.

14. Throughout Plaintiff's employment, Duran had and exercised power and authority over personnel decisions at New Beginnings Daycare.

15. Duran had and exercised the power to hire and fire employees, to direct the manner in which employees performed their duties and work assignments, and to establish and implement the pay practices, work, and scheduling policies at New Beginnings Daycare.

16. Duran both hired and fired Plaintiff.

17. Duran was regularly present at New Beginnings Daycare approximately two to three times per week, and when she was not physically present, she observed security footage to supervise employee activities.

18. Duran also messaged Plaintiff about her work and duties via WhatsApp on approximately a daily basis.

19. Duran controlled Plaintiff's work schedule.

20. Duran determined Plaintiff's pay rate and also gave Plaintiff her weekly pay.

21. At all times relevant to the Complaint, Duran had the power to stop any of Defendants' illegal pay practices.

22. Duran exercised sufficient control over Plaintiff's working conditions and the unlawful policies and practices alleged in this Complaint to be considered his employer under the FLSA and the NYLL.

## FACTUAL ALLEGATIONS

**Wage Violations**

23. Throughout her employment, Plaintiff was a non-exempt employee under the FLSA and NYLL.

24. Plaintiff worked at New Beginnings Daycare, engaging with, caring for, and feeding the babies and toddlers enrolled in the daycare program. She also regularly cleaned the main room, bathroom, and kitchen of the daycare twice daily (mid-day and at the end of the day), cooked breakfast and lunch for the children, and created lesson plans and activities. Furthermore, Plaintiff regularly communicated with the parents and caretakers of the children enrolled at New Beginnings Daycare.

4

25. Plaintiff initially worked part-time hours at New Beginnings Daycare, but by the end of October 2022, she was working full-time hours due to increased demands from Defendant Duran.

26. Throughout her employment, Plaintiff took 10-to-15-minute breaks when the children at the daycare were resting but was not allowed to leave the premises and was not given an officially designated, uninterrupted break time.

27. Starting in late October 2022 and through the end of her employment, Plaintiff regularly worked approximately 55 hours per week.

28. Plaintiff's typical work schedule was from about 7:00 AM to 6:00 PM, Monday through Friday.

29. There was no electronic timekeeping system at New Beginnings Daycare. Instead, Plaintiff was required to fill out weekly timeslips with the hours that she worked.

30. Although Plaintiff filled out the timeslips and noted her work hours, Defendant Duran did not always pay the hours written on the timeslips.

31. On approximately four occasions, Defendant Duran paid Plaintiff less than the total hours written on Plaintiff's timeslips.

32. Defendants knowingly paid Plaintiff for fewer hours than she actually worked.

33. Plaintiff's rate of pay was fifteen dollars per hour throughout her employment.

34. Defendants paid Plaintiff at a straight-time rate, *i.e.*, the same hourly rate for all hours worked, including hours worked over forty per week.

5

35. Defendants failed to pay Plaintiff overtime wages at one and one-half (1 ½) times her regular pay rate for hours worked over forty per week.

36. Defendants failed to pay Plaintiff spread-of-hours pay, *i.e.,* an extra hour of wages at the full minimum wage rate, on the occasions that her workday exceeded ten hours, as required by the NYLL.

37. Defendants failed to furnish Plaintiff with a written wage notice at the time of her hiring or at any other time during his employment, listing her wage payment rate and other information as required by the NYLL.

38. Defendants failed to furnish Plaintiff with wage statements reflecting, *inter alia,* her total pay amount, the number of hours worked in that pay period, or her regular and overtime rates of pay as required by the NYLL.

**Fraudulent Inducement**

39. In or around January 2023, Duran approached Plaintiff with an opportunity to open a new daycare center together, purportedly as partners.

40. Duran first spoke to Plaintiff about the plan to open the daycare center together during an in-person conversation at New Beginnings Daycare.

41. Throughout January and early February 2023, Plaintiff and Duran had several follow-up conversations about the plan to open a new daycare center and become business partners.

42. Plaintiff accepted Duran's offer to work together.

43. Duran told Plaintiff that she had identified a location for the new daycare center in Astoria, Queens, New York.

44. Duran told Plaintiff that she would have to provide sixteen thousand dollars ($16,000) to pay the security deposit to obtain a lease for the new daycare center.

45. Plaintiff gave Duran a check for $16,000 on February 8, 2023.

46. On February 8, 2023, Plaintiff and Duran signed an agreement confirming that Plaintiff was paying Duran $16,000, which was to be used for the security deposit and rent at the new daycare center location.

47. Duran insisted that Plaintiff write a check to Defendant Beginnings Daycare Corp. for $16,000 instead of depositing money into a joint account or paying the property's landlord directly.

48. Plaintiff hesitated but ultimately capitulated and gave Duran a check for $16,000, written out to Defendant Beginnings Daycare Corp.

49. Duran told Plaintiff that she paid the $16,000 to the landlord, but Plaintiff did not receive any confirmation from the landlord about the payment.

50. In fact, Plaintiff has yet to meet the landlord despite requesting to do so several times.

51. On February 28, 2023, Duran filed the paperwork to establish New Beginnings First Step Day Care Corp., a new New York State corporation.

52. Plaintiff understood New Beginnings First Step Day Care Corp. to have been created for the purpose of opening the new daycare center, which she and Duran would own and run jointly.

53. A few weeks later, in or around March 2023, Duran told Plaintiff that she did not want to proceed with the plan to open the new daycare.

54. Even after she abandoned the plan to open the new daycare, Duran refused to return the $16,000 she had collected from Plaintiff.

55. Plaintiff asked Duran to return the money since there was no lease and their business venture was no longer proceeding forward.

56. Duran refused to return the money to Plaintiff and said that losing money was part of the reality of business ownership. She said, "sometimes you win, sometimes you lose."

57. Shortly thereafter, in May 2023, Duran terminated Plaintiff's employment.

58. Upon information and belief, Duran never intended to open a daycare with Plaintiff.

59. Plaintiff reasonably believed that she and Duran were in a partnership and paid $16,000 because she had a good faith belief that the money would be used to secure a lease for the daycare program.

60. Plaintiff and Defendant Duran did not execute a lease for the daycare program.

61. Duran obtained $16,000 from Plaintiff under false pretenses.

62. Duran fraudulently induced Plaintiff to pay money to her and Defendant Beginnings Daycare Corp.

63. Defendants engaged in unlawful fraud and fraudulent inducement.

8

## FIRST CAUSE OF ACTION
**Fair Labor Standards Act – Unpaid Overtime Wages**

64. Plaintiff restates, re-alleges, and incorporates by reference all of the preceding paragraphs as if fully set forth herein.

65. Defendants were employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a) and employed Plaintiff.

66. Defendants were required to pay Plaintiff overtime compensation at rates that were no less than one and one-half (1½) times the greater of her regular rate of pay, or the full federal minimum wage rate, for all hours worked in excess of forty per workweek pursuant to the overtime wage provisions of the FLSA, 29 U.S.C. § 207, *et seq*.

67. Defendants failed to pay Plaintiff the overtime wages to which she was entitled under the FLSA.

68. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff the proper overtime wage rate.

69. Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants, jointly and severally, unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## SECOND CAUSE OF ACTION
**New York Labor Law – Unpaid Overtime Wages**

70. Plaintiff restates, re-alleges, and incorporates by reference all of the preceding paragraphs as if fully set forth herein.

9

71. Defendants are employers within the meaning of the NYLL §§ 190, 651(5), 652, and supporting New York State Department of Labor ("NYDOL") Regulations and employed Plaintiff.

72. Under New York State Department of Labor ("NYDOL") regulations, including 12 N.Y.C.R.R. §§ 137-1.3, 146-1.4, Defendants were required to pay Plaintiff one and one-half (1 ½) times her regular rate of pay for all hours worked in excess of forty per workweek.

73. Defendants failed to pay Plaintiff the overtime wages she was entitled to under the NYLL and its supporting regulations.

74. Defendants willfully violated the NYLL and its supporting regulations by knowingly and intentionally failing to pay Plaintiff the proper overtime wage rate.

75. Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants, jointly and severally, unpaid overtime wages, unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**THIRD CAUSE OF ACTION**
**New York Labor Law – Spread-of-Hours Pay**

76. Plaintiff restates, re-alleges, and incorporates by reference all of the preceding paragraphs as if fully set forth herein.

77. Defendant willfully failed to pay Plaintiff additional compensation of one hour's pay at the applicable minimum wage rate on days during which her workday spanned more than ten hours.

78. Defendant's failure to pay Plaintiff spread-of-hours pay was a willful violation of Section 650 *et seq.* of the NYLL and its supporting NYDOL Regulations, including, but not limited to, 12 N.Y.C.R.R. § 142–2.4.

79. Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants, jointly and severally, unpaid spread-of-hours compensation, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**FOURTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Wage Statements**

80. Plaintiff restates, re-alleges, and incorporates by reference all of the preceding paragraphs as if fully set forth herein.

81. The Wage Theft Prevention Act of the NYLL requires employers to provide employees with an accurate wage statement each time they are paid.

82. Throughout Plaintiff's employment with Defendants, Defendants paid Plaintiff without providing a wage statement at the end of every pay period accurately listing, *inter alia*, her regular and overtime rates of pay, the number of regular and overtime hours worked per pay period, her gross wages; deductions; allowances, if any, claimed as part of the minimum wage; or net wages, in violation of NYLL § 195(3).

83. Due to Defendants' NYLL violations, Plaintiff is entitled to recover, from Defendants, jointly and severally, liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to NYLL § 198(1-d).

## FIFTH CAUSE OF ACTION
## NYLL Wage Theft Prevention Act – Failure to Provide Wage Notices

84. Plaintiff restates, re-alleges, and incorporates by reference all of the preceding paragraphs as if fully set forth herein.

85. The Wage Theft Prevention Act of the NYLL requires employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

86. Defendants failed to furnish Plaintiff at the time of hiring, rehiring, or whenever her rate of pay changed, with a wage notice containing his rate(s) of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage including tip, meal, or lodging allowances; the regular payday designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL § 195(1).

87. Due to Defendants' NYLL violations, Plaintiff is entitled to recover, from Defendants, jointly and severally, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

12

## SIXTH CAUSE OF ACTION
**Fraud & Fraudulent Inducement**

88. Plaintiff restates, re-alleges, and incorporates by reference all of the preceding paragraphs as if fully set forth herein.

89. Plaintiff alleges that Defendant Duran is liable for fraud and fraudulent inducement in accordance with the pleading requirements of FRCP 9(b) and CPLR §3016(b).

90. Defendant Duran fraudulently induced Plaintiff to pay $16,000 to Defendant Daycare Corp.

91. Duran told Plaintiff that payment was in exchange for entering a purported business partnership, which was never consummated.

92. Plaintiff reasonably relied upon Defendant Duran's lies and promises about a business partnership that was not real.

93. Because Defendant Duran was also Plaintiff's employer, she was in a position of power and able to exert an undue influence upon Plaintiff.

94. Defendant Duran knowingly and willfully induced Plaintiff to pay her $16,000 for a daycare she did not intend to open with her.

95. Had Plaintiff known that Defendant Duran's representations were false and fraudulent, Plaintiff would not have given her $16,000 to open a new daycare as Duran's business partner.

96. Defendant Duran refused to return Plaintiff's money to her.

97. As a result of Defendant Duran's knowingly false and fraudulent misrepresentations and Plaintiff's reliance thereupon, Plaintiff has suffered damages

13

in an amount to be determined at trial, together with prejudgment interest, postjudgment interest, attorneys' fees, costs, and disbursements.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

    a.    declaring that Defendants have violated the overtime wage provisions of the FLSA and NYLL;

    b.    declaring that Defendants violated the spread-of-hours pay provision of the NYLL;

    c.    declaring that Defendants violated the notice and record-keeping provisions of the NYLL;

    d.    declaring that Defendants' violations of the FLSA and the NYLL were willful;

    e.    enjoining future violations of the FLSA and NYLL by Defendants;

    f.    awarding Plaintiff damages for unpaid overtime wages;

    g.    awarding Plaintiff unpaid spread-of-hours wages;

    h.    awarding Plaintiff statutory damages as a result of Defendants' failure to furnish him with accurate wage statements pursuant to the NYLL;

    i.    awarding Plaintiff liquidated damages in an amount equal to the total amount of wages found to be due pursuant to the FLSA;

    j.    award compensatory damages to Plaintiff to compensate her for the fraud and fraudulent inducement she experienced;

    k.    award Plaintiff all other damages to which she is entitled;

l. awarding Plaintiff pre-judgment and post-judgment interest under the NYLL;

m. awarding Plaintiff reasonable attorneys' fees and costs pursuant to the FLSA and the NYLL; and

n. awarding such other and further relief as the Court deems appropriate.

> FRONTERA LAW PLLC
>
> _____
> Laura Rodríguez
> Frontera Law PLLC
> 411 Theodore Fremd Avenue
> Suite 235
> Rye, New York 10580
> (914) 873-4388
> lrodriguez@fronteralawfirm.com
>
> **Attorneys for Plaintiff**

Date: August 6, 2024